# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

MONIQUE NICOLE WELDON,

        Plaintiff,

v.                                           CIVIL ACTION NO. 3:16-7887

BOYD HODGE, Maintenance Officer;
PAUL STUMP, Unit Manager;
SHELBY SEARLS, Unit Manager; and
WEST VIRGINIA DIVISION OF CORRECTIONS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Among the various pending motions before the Court is Defendants' Motion to Enforce Settlement Agreement. (ECF Nos. 97, 101, 102, and 103). Because the Motion was contested (ECF No. 108), the Court held a plenary hearing to receive evidence and hear the parties' arguments. The matter is fully briefed and the evidentiary record is now sufficient to rule on the matter. As explained below, the Court finds that a settlement agreement was reached. Accordingly, the Court will enforce that agreement. However, as there still remain questions regarding the compliance with the settlement agreement, the Court will refer to the Magistrate Judge certain issues detailed below.

**I. BACKGROUND**

This matter commenced with the filing of a *pro se* complaint by Monique Weldon ("Plaintiff"). *Compl.*, Aug. 18, 2016, ECF No. 3. Plaintiff made various allegations in her complaint concerning unlawful treatment by prison staff during her incarceration at Lakin

Correctional Center, in West Columbia, West Virginia.[1] In November of 2016, Paul Strobel, an attorney who has experience handling civil claims of incarcerated individuals, met with Plaintiff to discuss her claims before this Court. *Hr'g. Tr.*, ECF No. 141, at 4. On December 13, 2016, Mr. Strobel entered a notice of appearance on behalf of Plaintiff (ECF No. 70), and subsequently amended the complaint. (ECF. No. 77).

During one of their meetings in late February or early March, Mr. Strobel and Plaintiff discussed the possibility of settlement. *Hr'g. Tr.* at 6-9, 73. In this discussion, Plaintiff communicated to Mr. Strobel that any potential settlement would have to include the agreement of the West Virginia Department of Corrections ("WVDOC") to expunge a behavioral infraction from her record. *Hr'g. Tr.* at 6-12, 15-16. Specifically, Plaintiff wanted a "fraudulent representation" infraction expunged that was submitted on September 9, 2016. *Hr'g. Tr.* at 7, 55-56. This infraction arose from Plaintiff's filing of an administrative complaint about one of the alleged incidents of mistreatment that gave rise to this suit. *Id*.

However, the potential for a settlement based upon this essential term was time constrained. Plaintiff had a parole hearing on March 13, 2017. If she was to receive the benefit of the dismissed infraction, the settlement had to be reached quickly enough to allow for sufficient time for recalculation of her Level of Service/ Case Management Inventory ("LSCMI"), a risk assessment tool used to determine the appropriateness of parole. Plaintiff believed that by erasing this infraction, her LSCMI score would lower, thus increasing her chances of receiving parole. *Hr'g. Tr.* at 7-9, 109-10, 122. After consulting with his client, Mr. Strobel made demand upon defense counsel that included a monetary component and expungement of the infraction on or around

---

[1] At all times relevant to this case, Plaintiff has been incarcerated in Lakin Correctional Center.

March 6, 2017. *Hr'g. Def.'s Ex. 2*, ECF No. 137-3, at 1; *Hr'g. Tr.* at 9-10. Defense counsel countered, and after some additional negotiation, Mr. Strobel and counsel for the defendants agreed to the terms of a settlement on March 9, 2017. As recited in a March 10 email confirming the agreement reached, the WVDOC agreed to the following terms:

> 1. Payment of $5,000.00;
> 2. Expunging from her record the disciplinary action for "fraudulent representation" from the September 9, 2016 "bee" incident; and
> 3. Re-evaluating her "LSCMI" in light of the expungement.

*Hr'g. Ct.'s Ex. A*, ECF No. 137-1, at 2. In consideration for those promises, Ms. Weldon had to agree to dismiss this civil action, Case No. 3:16-cv-7887, as well as two other pending civil actions:

> (1) *State of West Virginia ex rel. Monique W. v. Anne Thomas, et. Al.*, Matter No. 16-0939 pending before the Supreme Court of Appeals of West Virginia; and (2) *Monique Nicole Weldon v. Lori Nohe, et. al.*, Civil Action No. 3:16-3815, previously pending in the U.S. District Court for the Southern District of West Virginia, now on appeal before the Fourth Circuit as Case No. 16-7721.

*Id.*

On Friday, March 10, 2017, Plaintiff called Mr. Strobel to inform him that instead of her LSCMI going down (positive for Plaintiff, meaning a better chance of parole), it went up (negative for Plaintiff, meaning a reduced chance of parole). *Hr'g. Ct.'s Ex. A*, at 2. Mr. Strobel reached out to WVDOC's counsel, Ms. Lou Ann Cyrus, to confirm that the WVDOC had met its obligations under the settlement agreement. Ms. Cyrus initially responded that Plaintiff's LSCMI had gone up from 17 to 21 based upon Plaintiff's inability to obtain/maintain employment. *Id.* Although the new overall LSCMI was negative for Plaintiff, Ms. Cyrus told Mr. Strobel that "as a result of expunging the write-up, her classification score decreased (again, a positive movement) from a 4 to a 3, so [expunging the "fraudulent representation" infraction] did improve her score as anticipated." *Id.* On the day of the parole hearing, Ms. Cyrus informed Mr. Strobel that the LSCMI

was again updated that morning, "taking into account the removal of the fraudulent representation write-up." *Id*. at 1. This time, Plaintiff's LSCMI score was 17, "[i]nstead of 21." *Id.*

Despite the alleged expungement of the infraction, the parole board denied Plaintiff's application for parole. *Hr'g. Def.'s Ex. 1*, at 1. Attached to the parole board's summary decision is a list of 16 infractions she received during incarceration. *Id.* at 3. The list did not appear to include the September 9, 2016 infraction for "fraudulent representation" that the WVDOC had agreed to expunge.

Prior to the parole hearing, Plaintiff had neither signed any settlement agreement, nor filed a voluntary dismissal for any claims. On April 5, 2017, Ms. Cyrus sent Mr. Strobel two batches of documents. *Hr'g. Def.'s Ex. 4*, ECF No. 137-5, at 1. The first was a collection of information regarding the 16 violations that were listed in the attachment to the parole summary decision. *Id.* at 1-30. The second included a "Release of All Claims, proposed Dismissal Order, proposed Rule 41(a) Dismissal Order, and a settlement check in the amount of Five Thousand Dollars ($5,000.00.)" *Id.* at 3, 31-42. On April 19, 2017, Mr. Strobel forwarded the settlement documents, along with a copy of the settlement check, to Plaintiff with instruction to review the agreement and sign. *Pl.'s Resp. to Counsel's Mot. to Withdraw*, ECF No. 92, at 32. In an undated letter, Plaintiff informed Mr. Strobel that she would not sign the settlement agreement documents, and instead wished to "counter their offer to $10-12 [t]housand dollars." *Id.* at 27-30. On April 28, 2017, Mr. Strobel filed a Motion to Withdraw as Counsel.

**II. STANDARD OF REVIEW**

Upon a motion to enforce a settlement, a court must determine (1) whether a complete agreement was reached and if so, (2) the terms and conditions of that agreement. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540-41 (4th Cir. 2002). Where an agreement exists, and the terms are

ascertainable, district courts have "inherent authority" to enforce these agreements. *Id*. at 540 (citing *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)). Further, where a litigant voluntarily accepts an offer of settlement, the Court must hold the parties to their agreement unless the settlement is substantially unfair. *See Petty v. Timken Corp.*, 849 F.2d 130, 133 (4th Cir. 1988) (providing that this acceptance can occur either directly or indirectly through "the duly authorized actions of his attorney," and adding that a court should enforce the agreement due to judicial economy). But, courts cannot place themselves "in the role of the 'final arbiter.'" *Hensley*, 277 F.3d at 540 (quoting *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983)).

When factual disagreements arise over the existence of a settlements, its terms, or the bounds of an attorney's authority to enter into a settlement agreement, a district court must hold an evidentiary hearing. *See id*. at 541 (citing *Millner*, 643 F.2d at 1009 and *Alexander v. Indus. of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990)); *Williams v. Prof. Trans., Inc.*, 388 F.3d 127, 131-32 (4th Cir. 2004). After a hearing, the court must "make findings on the issues in dispute." *Hensley*, 277 F.3d at 541 (citing *Ozyagcilar*, 701 F.2d at 308 n.*). This Court held the required evidentiary hearing on September 15, 2017 after instructing the parties to present evidence regarding the existence of a settlement agreement, its terms, and the authority of Paul Strobel, Plaintiff's former counsel, to enter into the agreement.[2] *See Order*, Aug. 29, 2017, ECF No. 120, at 2. The Court makes the necessary findings herein by a preponderance of the evidence.

**III. DISCUSSION**

When considering a motion to enforce a settlement, the Court draws upon concepts of contract law. *See Hensley*, 277 F.3d at 540. Consistent with contract law, to enforce a settlement

---

[2] Although counsel for the defendants and Mr. Strobel appeared in person, Plaintiff appeared via a video conference system that allowed for complete audio and visual involvement in the proceedings.

agreement there must be a meeting of the minds between the parties. *See Ozyagcilar*, 701 F.2d at 308. Once there is a meeting of the minds, a party "having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Hensley*, 277 F.3d at 540.

In this case, the Court finds that the parties had a meeting of the minds regarding a complete settlement agreement. The Court finds that the Plaintiff knew and agreed to the complete settlement agreement and that Mr. Strobel properly communicated that acceptance to defense counsel.

In her pleadings and during some of her hearing testimony, Plaintiff contended that she had neither agreed to the settlement term of $5,000.00, nor to the expungement of merely one prison infraction. *Pl.'s Aff./Affirmation in Opposition to Defs.' Mot. for Force* [sic] *Settlement and Motion to Dismiss*, ECF 108, at 2-5; *Hr'g. Tr.* at 92, 103-04, 118, 136. Later in her testimony, however, Plaintiff explained that she had agreed to the settlement terms of $5,000.00 and a clearing of her conduct record from March 2015 to March 2017. *Hr'g. Tr.* at 123. But, after her LSCMI score went up and she was denied parole, Plaintiff believed that the defendants did not uphold their end of the bargain.[3] *Id.* at 111-12, 114-16, 124. Based upon what she perceived as a breach of their agreement, Plaintiff wanted more money and additional terms to go forward with any settlement agreement. *Id.* at 44, 124. Otherwise, she wanted to continue with the suit.

The Court finds that Plaintiff did consent to the agreement arranged by Mr. Strobel, despite her sometimes conflicting testimony. *See Padilla v. Troxell*, 850 F.3d 168, 175 (4th Cir. 2007) ("Where, as here, 'a district court's factual findings turn on assessments of witness credibility or the weighing of conflicting evidence during a bench trial, such findings are entitled to even greater

---

[3] *See infra* p.13-15 addressing the possibility of a breach.

deference." (quoting *FTC v. Ross*, 743 F.3d 886, 894 (4th Cir. 2014))). The record supports that she consented to the settlement. One of the most important terms of the settlement was the WVDOC's expungement of the "fraudulent representation" infraction. *Hr'g. Tr.* at. Without the settlement agreement, the WVDOC would have been under no obligation to expunge that infraction. However, around the time of her parole hearing Plaintiff acknowledged that the 10-12, 42-43infraction should have been expunged. *Defs.' Mot. to Enforce Settlement Agreement Ex. 5*, ECF No. 97-5, at 8; *Hr'g. Tr.* at 104-07, 108-12, 114-16, 124; *see also Hr'g. Ct.'s Ex. A*, at 2. At her parole hearing, Plaintiff told the examiner that "I just recently had a write-up expunged off my record." *Id.* WVDOC would have only been obligated to expunge that infraction if an agreement had been consummated. Plaintiff's insistence that the WVDOC should have acted in accordance with one of the terms of the settlement reflects that she appreciated that an agreement existed and that the parties had made mutual promises.

Applying general principals of contract law strengthens the showing that Plaintiff agreed to the settlement terms. Acceptance of an offer can be shown by word, act, or conduct. *See New v. GameStop, Inc.*, 753 S.E.2d 62, 70-71 (W. Va. 2013). Plaintiff's acknowledgment that the WVDOC had an obligation to expunge an infraction demonstrates conducts consistent with the acceptance of the settlement agreement. *See Bailey v. Sewell Coal Co.*, 437 S.E.2d 448, 451 (W. Va. 1993) ("That their minds have met may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied." (citing *Lacey v. Cardwell*, 217 S.E.2d 835 (Va. 1975) and *Charbonnages de France v. Smith*, 597 F.2d 406, 415-16 (4th Cir. 1979))).

But, Plaintiff did not only appreciate the settlement term regarding the expungement. Instead, the record demonstrates that Plaintiff understood the terms of the complete settlement.

Mr. Strobel testified that Plaintiff understood the terms of the settlement and agreed to them. *Hr'g. Tr.* at 9-12, 15-16. He explained that Plaintiff wanted to obtain, above other terms, agreement to the expungement before the impending parole hearing. *Hr'g. Tr.* at 10-12, 41-42. That Plaintiff might now regret "giving in" on the other terms, such as agreeing to a lower monetary payment and to dismiss her other pending suits, does not negate that the parties reached a settlement. *See Hensley*, 277 F.3d at 540 ("Having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." (quoting *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997) (alterations and internal quotations omitted))).

Plaintiff has, at times, contended that no settlement exits because she never signed the agreement. *Pl.'s Resp. to Counsel's Mot. to Withdraw*, at 1, 5, 28. However, as the Fourth Circuit has made clear, "the fact that the agreement is not in writing does not render it unenforceable." *Hensley*, 277 F.3d at 540 (citing *Alexander v. Indus. of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990)). That the parties in this case had neither drafted nor signed the written recitation of the settlement terms does not negate the fact that an agreement had been reached. If the parties were going to reach a settlement, they had to do so before the impending parole hearing. This forced a time constraint upon the settlement process. Instead of drafting the appropriate settlement documents, the parties spent their time insuring that the infraction was expunged and that Plaintiff's incarceration record properly reflected her expungement. *See Hr'g. Ct.'s Ex. A.* at 1-3 (showing that the parties communication focused primarily upon the recalculation and expungement); *Hr'g. Tr.* at 42-43, 53-54.

Indeed, the lawyers recognized that under the given circumstances, the written settlement documents were less of a priority. *See Mem. of Law in Support of the WVDOC Mot. to Enforce Settlement Agreement*, ECF No. 98, at 5. The formal settlement documents were exchanged

roughly two weeks after the parole hearing. *Hr'g. Def.'s Ex. 4*, ECF No. 137-5, at 1. By that point, one of the most important aspects of performance under the agreement was already supposed to have been completed. This supports that the agreement to the terms did not hinge upon the writing. If the settlement agreement had been contingent upon the signed writing, Plaintiff could not have expected to benefit from an expungement of the infraction at her parole hearing.

Based upon these facts, the Court finds that the parties reached complete settlement agreement. *See Moore v. Beaufort Cty. N.C.*, 936 F.2d 159, 162 (4th Cir. 1991) (providing that whether the parties agreed to settle is the first determination a court must make to enforce a settlement). In order to enforce a settlement, the Court also must be able to determine the terms and conditions of the agreement. In this case, the Court believes the terms and conditions of the settlement are readily ascertainable.

On the whole, the testimony in this case shows that there were four terms to the settlement agreement. An email sent contemporaneously to the negotiation reflects these four essential terms. *Hr'g. Ct.'s Ex. A*, at 2-3. They were as follows: WVDOC agreed, on behalf of itself and the other defendants, to (1) pay $5,000.00; (2) expunge "from her record the disciplinary action for 'fraudulent representation' from the September 9, 2016 'bee' incident;" and (3) re-evaulate "her 'LSCMI' in light of the expungement," in consideration for Plaintiff (4) dismissing this case, in addition to two other cases currently pending before the Supreme Court of Appeals of West Virginia and the Fourth Circuit, respectively ("the four terms"). *Id.*

It is clear that Plaintiff expected to receive parole once the "fraudulent representation" infraction was expunged. Plaintiff may have assigned more value to the possibility of ending her incarceration than to potentially receiving more money or continuing her three suits ((1) this case, Case No. 3:16-cv-7887; (2) *State of West Virginia ex rel. Monique W. v. Anne Thomas, et. Al.*,

Matter No. 16-0939; and (3) *Monique Nicole Weldon v. Lori Nohe, et. al.*, Civil Action No. 3:16-cv-3815, now on appeal before the Fourth Circuit as Case No. 16-7721). Indeed, she suggested as much during her testimony. *Hr'g. Tr.* at 122. But this Court need not make a finding regarding Plaintiff's potential motivations. This Court needs only to ascertain that Plaintiff knew all the conditions and consented to them. *See New*, 753 S.E.2d at 71 (explaining that "meeting of the minds" required mutual understanding and agreement of the terms).

From the evidence already discussed, the Court finds Plaintiff knew and consented to the four terms of the settlement agreement that were recited in the email correspondence between Mr. Strobel and Ms. Cyrus. The Court bases this finding, in part, upon the testimony of Mr. Strobel. The Court believes Mr. Strobel presented a credible recitation of events. Mr. Strobel testified that he explained the complete settlement, including all four terms, as well as the positive and negative aspects of accepting the settlement. *Hr'g. Tr.* at 9-12, 15-16, 23-26. Mr. Strobel reported that even after this explanation of the settlement terms, Plaintiff consented to the terms. *Id*.

However, during her testimony, Plaintiff explained that even if she had consented to a settlement, the terms she consented to were different from the four terms recited by Mr. Strobel and Ms. Cyrus. At first, Plaintiff claimed that she had only consented to settlement upon the following terms: (1) $10,000; (2) payment of court costs; (3) and expungement of three infractions (the "fraudulent representation," an insubordination and insolence, and one for some unauthorized activity). *Hr'g. Tr.* at 103-07, 115-16. Later in her testimony, Plaintiff recognized that she had also agreed to settlement for $5,000 and clearing her conduct record for the period from March, 2015 to March, 2017. *Id*. at 122-23. However, Mr. Strobel suggested an alternative version of these factual developments.

Mr. Strobel testified that, with Plaintiff's consent, he made an original demand of $10,000 or $15,000 plus the expungement of the fraudulent representation infraction and recalculation of the LSCMI. *Hr'g. Tr.* at 9-12. The defendants responded that they would expunge the fraudulent representation infraction and recalculate the LSCMI, but that they would pay no more than $5,000. *Hr'g. Tr.* at 9-12, 14-16. He explained that Plaintiff chose to go forward with the settlement terms of $5,000, expungement of the one fraudulent representation infraction, and a recalculation of Plaintiff's LSCMI in exchange for dismissing all of her claims. *Id*. But, after an agreement to settle had been reached, Plaintiff wanted to get further concessions from the defendants about expunging other infractions. *Id*. at 14. Mr. Strobel told her that she had already agreed to the terms, but that he would go back to Ms. Cyrus to propose additional terms. *Id.* After Ms. Cyrus responded, Mr. Strobel informed Plaintiff that Ms. Cyrus had reported that the defendants would not make additional adjustments to the infractions. *Id.* 15-16. Plaintiff accepted this information, and chose to go forward with the already agreed settlement. *Id.*

Ms. Cyrus's testimony confirms Mr. Strobel's version of how multiple infractions became a point of discussion. Ms. Cyrus stated that after an agreement had been reached, Mr. Strobel contacted her to see if the WVDOC would remove additional infractions from Plaintiff's disciplinary record. *Hr'g. Tr.* at 54-55. After checking with her client, Ms. Cyrus called back Mr. Strobel to report that the defendants would not agree to the additional expungements and that the agreement would have to stand on the already existing terms. *Id.*

The Court finds the testimony of Mr. Strobel, as confirmed by Ms. Cyrus, to be convincing. The requests for additional infraction expungements appear to have occurred as a proposed modification to the existing settlement agreement, not as a term of the settlement offer. By the time the additional infractions were mentioned by Plaintiff, and proposed by Mr. Strobel, Plaintiff

had already agreed to the settlement agreement on the four terms. As such, the proposed modification terms were not part of the settlement agreement. *See Citizens Telecomm. Co. of W. Va. v. Sheridan*, 799 S.E.2d 144, 152 (W. Va. 2017) (explaining that modifications require mutual assent and additional consideration).

Plaintiff's own testimony before the parole board shows that the agreement encompassed the expungement of only one infraction. Before the board, Plaintiff said "I just recently had *a write-up* expunged off my record." *Defs.' Mot. to Enforce Settlement Agreement Ex. 5*, at 8 (emphasis added). Plaintiff did not contend there were multiple expungements. The parole board also represented that the infraction was removed. The parole examiner responded to Plaintiff's contention that one of the infractions should have been expunged by asserting that "[w]e're not even talking about that." *Id.* This seemingly confirmed to Plaintiff, at the time, that the settlement terms were in effect and that the defendants had complied.[4] This demonstrates that the deal was for one infraction, not multiple, and Plaintiff appreciated that at the time.

Plaintiff also contended that she never agreed to dismiss all of her claims. *Hr'g. Tr.* at 25-26, 137. When viewed against the testimony of Mr. Strobel, the Court finds Plaintiff's contentions unavailing. The occasionally contradictory nature of Plaintiff's testimony entitles it to less weight than that of Mr. Strobel. However, even if Plaintiff were to contend that she misunderstood Mr. Strobel's explanation of the settlement terms, that would not justify invalidating the settlement agreement. *See Napier v. Chesapeake & Ohio Ry. Co.*, 582 F.2d 1344, 1346 (4th Cir. 1978) (finding that a client's misunderstanding of an attorney's information regarding potential settlement would not invalidate specific performance of a settlement agreement).

---

[4] *But see infra* p. 13-15 that explain that subsequent evidence raise concerns about the defendants' compliance with the terms of the settlement.

Therefore, the Court finds that the four terms constituted the terms of the settlement agreement consented to by Plaintiff. Accordingly, the Court **GRANTS** defendants Motion to Enforce Settlement Agreement (ECF Nos. 97, 101, 102, and 103).

Having reached the conclusion that the settlement agreement is enforceable, the Court must address another issue that arose during the hearing. At multiple points, Plaintiff suggested that the defendants had not complied with the settlement terms. *Hr'g. Tr.* at 111-14, 115-16, 124. Upon the Courts inspection of the record, it is possible that Plaintiff has a valid complaint regarding the defendants' performance. The LSCMI records (*Hr'g. Pl.'s Ex. 3*, ECF No. 137-9) and the documents apparently reflecting the infractions considered by the parole board (*Hr'g. Def.'s Exs. 2 & 4*, ECF Nos. 137-3, 137-5) concern the Court the most. These documents do not seem to reflect the same number of infractions.

Even after further inspection, and some explanation, these documents do not appear to add up. Counsel for WVDOC attempted to explain why the LSCMI reports from December 12, March 10, and March 12, reflect different numbers of incarceration infractions. *Hr'g. Tr.* at 126-31; *Hr'g. Pl.'s Ex. 3*, at 5, 6, 8, 9, 16, 17, 19, 20, 27, 28, 30, 31. Those three reports reflected 15, 17, and 14 incarceration infractions, respectively. *Id.* Counsel for WVDOC explained that the December 12 report contained the "fraudulent representation" infraction that was later expunged. However, when Plaintiff's LSCMI was recalculated, her infractions went up because she had incurred additional infractions between December 12, 2016 and March 10, 2017. Even though her infractions had gone up, her "Procriminal Attitude/Orientation" score went down. *Hr'g. Pl.'s Ex. 3*, at 5, 16. Ms. Cyrus told Mr. Strobel that this decrease resulted from the expungement of the "fraudulent representation" infraction. *Hr'g. Ct.'s Ex. A*, at 3. However, once Mr. Strobel had reported to Ms. Cyrus that the point of the settlement was not to decrease Plaintiff's chance of

parole, Ms. Cyrus had the WVDOC recalculate Plaintiff's LSCMI by merely taking the December 12, 2016 scores and subtracting the expunged infraction. *Id.* at 3; *Hr'g. Tr.* at 130-31. It appears as if the one expunged infraction may have been subtracted because the December 12, 2016 report reflects 15 infractions, while March 12, 2017 report reflects 14.

But, the mere subtraction from the number of reported infractions does not necessitate concluding that the defendants complied with the agreement. Although she had one less infraction recorded on her March 12, 2017 report than her December 12, 2016 report, her "Procriminal Attitude/Orientaion" score was the same. *Hr'g. Pl.'s Ex. 3*, at 5, 27. On both reports the score was 4. However, according to Ms. Cyrus, the subtraction of the "fraudulent representation" infraction was responsible for lowering the "Procriminal Attitude/Orientation" score from 4 to 3 from Plaintiff's December 16 to March 10 reports. *Hr'g. Ct.'s Ex. A.*, at 3; *Hr'g. Tr.* at 131. It seems incongruous that a "Procriminal Attitude/Orientation" score would decrease from 4 to 3 when the infractions increased from 15 to 17 (Dec. 16 report to March 10 report), but it would stay the same when the infractions decreased from 15 to 14 (Dec. 16 report to March 12 report).

There are various other inconsistencies that are not accounted for. The list of infractions that the parole board apparently considered and relied upon reflects 16 infractions, not 17, 15, or 14. *Hr'g. Def.'s Ex. 1*, at 3. However, the documents Ms. Cyrus sent to Mr. Strobel that purported to be the supporting documentation for all the infractions considered by the board, neither reflect the same dates nor the same number of infractions as reflected on the list of 16 infractions. *Compare Hr'g. Def.'s Ex. 4*, at 1-30 *and Hr'g. Def.'s Ex. 1*, at 3.

However, the defendants' compliance with the settlement agreement was outside of the scope of the plenary hearing held on September 15, 2017. Accordingly, the Court **REFERS** this case to the Magistrate Judge to determine whether the defendants fully complied with the valid

settlement agreement by expunging the infraction before the parole board hearing. The Court will direct the further disposition of this case to consummate the settlement, after receiving the proposed findings and recommendations from the Magistrate Judge.

Additionally, there are other pending motions before the Court: Defendants' Motion to Dismiss (ECF Nos. 78, 80, 82, 84); Plaintiff's Motion for Status Hearing (ECF No. 105); Defendant, WVDOC's Motion to Enjoin Ms. Weldon From Seeking Discovery (ECF No. 106); Plaintiff's Motion to Compel Discovery (ECF No. 115); Plaintiff's Rule 20 Motion to Join Defendants and Leave to Amend Complaint (ECF No. 119); and Defendants' Motion to Permit Witness to Appear by Telephone (ECF No. 133). Because this Court grants Defendants' Motion to Enforce Settlement Agreement, the Court **DENIES AS MOOT** these other pending motions.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: September 27, 2017

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE